[No. A137217. First Dist., Div. Four. Jan. 13, 2015.]

BELLE TERRE RANCH, INC., Plaintiff and Respondent, v.
KENNETH C. WILSON et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified
for publication with the exceptions of parts II.A. through II.G.

**COUNSEL**

Kohut & Kohut and Richard A. De Liberty for Defendants and Appellants.

Passalacqua, Mazzoni, Gladden, Lopez & Maraviglia and Lourdes Lopez for Plaintiff and Respondent.

## OPINION

**BOLANOS, J.**[*]—This case involves a boundary dispute between a Healdsburg vineyard and the winery operators on the adjacent property. After a bench trial, the court ruled in favor of the vineyard, quieting title in its favor and granting permanent injunctive relief against further trespass by the vintners. The court also awarded $1 in nominal damages for past trespass, and upon that basis awarded the vineyard its attorney fees in the amount of nearly $117,000 under Code of Civil Procedure[1] section 1021.9. We affirm the judgment insofar as it resolved the boundary dispute, enjoined future trespass, and awarded nominal damages, but we reverse the award of attorney fees.

## I. BACKGROUND

In February 2000, Kenneth C. Wilson (Wilson) and Diane Wilson purchased the Soda Rock Winery property (Soda Rock) in the Alexander Valley. On the property was a century-old historic winery building that had fallen into disrepair. The Wilsons planned to, and over the next decade did, restore the winery. Their plan was to use the front of the old winery building as a tasting area, while the rear would be used to receive deliveries.

The rear of the winery building backs up to the vineyard belonging to Belle Terre Ranch, Inc. (Belle Terre), with a pathway or "avenue" between. A line of ancient oak trees runs behind the winery within about two to four feet of the building. There are three doors at the back of the winery, a standard entrance door and two eight-foot-wide double doors designed to receive deliveries.

The front entrance of the winery is located on Highway 128. In order to enter the winery from the back, users must turn from Highway 128 onto Soda Rock Lane and then onto the avenue. It is not possible to access the avenue without first traveling on Soda Rock Lane. When the Wilsons bought the Soda Rock property they did not know whether they had any right to use the avenue.

As the reconstruction of the Soda Rock winery commenced in about 2001, the Wilsons regularly used the avenue behind the winery building for

---

[*]Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Undesignated statutory references are to the Code of Civil Procedure.

deliveries and to allow access for heavy equipment involved in the reconstruction. Belle Terre also used the avenue for maneuvering its equipment in tending to the vineyard. Ron Dick, president of Belle Terre, testified he did not complain about the Wilsons' use of the avenue during the initial phases of the reconstruction because he was just trying to be neighborly.

Dick, who is approximately 70 years old, has lived on the Belle Terre property all his life. His parents bought Belle Terre, a 150-acre ranch, in 1943. The ranch has been used continuously for agriculture since that time and the avenue has always been considered part of Belle Terre. It has never been used by anyone else.

When the Wilsons applied for permits to complete the winery renovation, Belle Terre raised concerns with the county. On March 13, 2003, Belle Terre wrote a letter to the county about the Wilsons' plans, listing eight points of concern, including: "5. Property lines—A survey should be done before a permit is issued. [¶] 6. Trespassing—In the 1980's when the prior owners had a tasting room on site, there were people trespassing onto our property. This needs to be prevented."

When the use permit was finally issued in February 2004, the conditions of approval included: "Access for this site for the winery use, tasting room, and special event traffic shall be by means of the existing entrance from State Highway 128 subject to an encroachment permit from CalTrans. Should the applicant choose to have access from Soda Rock Lane, an application for modification to the Use Permit shall be required." The Wilsons never applied for a modification. Another condition of the use permit was that "[a]ll winery related truck traffic and visitor vehicles must access and egress from State Highway 128." Despite these conditions, the Wilsons regularly used Soda Rock Lane to access the avenue and the back of the winery.

According to Wilson, in late 2002 or early 2003, he had a conversation with Dick in which they agreed that a survey of the boundary should be conducted. Dick purportedly told Wilson at that time that he would "be glad to accommodate [Wilson] . . . for being a good neighbor to have access to repair the building." Dick's permission to use the avenue was not intended to be perpetual, however. Dick testified he allowed the Wilsons to use the avenue "to repair the winery." There was no evidence that Dick ever gave the Wilsons permission to use the avenue after the winery reconstruction was finished.

Knowing they would need a survey to plan the reconstruction, in January 2003 the Wilsons commissioned Joe Story of Curtis and Associates to perform the survey. This survey showed the Belle Terre-Soda Rock boundary was approximately 12 to 13 feet behind the rear wall of the winery building.

In 2008, Dick complained to the Wilsons that a cement truck involved in the winery renovation was kicking up too much dust on the avenue. Dick was concerned the dust was settling on the grape vines, damaging his crops and raising the specter of spider mites. Dick said he had not previously objected to the Wilsons using Belle Terre's avenue while repairing their winery because he was "trying to be a good neighbor." Wilson replied that the property line was about nine feet out from the winery, saying he had had it surveyed. Dick said the boundary was the line of oak trees growing next to the back of the winery.

After this confrontation, Belle Terre hired a different surveyor, Howard Brunner, to survey the boundary. Dick told Brunner before the survey that he believed the line of oak trees marked the property line. Brunner concluded the property line was approximately 9.4 feet closer to the back of the Wilsons' winery than the 2003 Story survey had shown, and it closely corresponded to the line of oak trees.

Dick had an attorney write a letter to the Wilsons in August 2008, telling them to stop trespassing on Belle Terre's property. When the Wilsons continued to use the avenue, Belle Terre filed suit to quiet title to the disputed strip of land and for trespass. In addition to quieting title, Belle Terre sought a permanent injunction barring the Wilsons from trespassing, as well as attorney fees and costs. The complaint did not request damages.

The Wilsons answered the complaint by claiming they owned the nine-foot strip of land, and denying they were claiming any interest in Belle Terre's property. At trial, however, the Wilsons claimed, in the alternative, a prescriptive easement over the disputed strip of land.

The trial became a battle of the surveyors. Both surveyors agreed the property description in the Wilsons' deed traced back to the Wentworth deed from 1870, when the "public highway" referenced in the deed was a narrow, single-lane, straight dirt road used by horses and wagons. The point of controversy was how best to locate the centerline of that road (which was a monument in the Wentworth and Wilson deeds), since the old highway had been replaced by a two-lane paved road (State Highway 128). The new road curved and, at least according to Story, did not track exactly along the same path as the old dirt road, which was straight.

Both surveyors agreed it was not possible to tell exactly where the 1870 dirt road had been based on the location of the current paved highway alone. The two surveyors, however, made different decisions about how best to locate the centerline of the old road.

Brunner testified that the old road was not "lost" or "obliterated," as those terms are used by surveyors, and Story reluctantly agreed it was not

"technically" obliterated. (See *Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 747–748 [175 Cal.Rptr.3d 650] (*Bloxham*).) According to Brunner, the only verifiable change in the road was an overlay of pavement which remained from a construction project in the 1990's. Besides, Brunner concluded the curve in Highway 128 occurred in front of the Pina property, and the road was straight in front of Soda Rock.

Brunner located the centerline of the old public highway using a 1988 survey by Neal Campbell that established the boundary between two nearby parcels, and a 1995 deed to the Pina property, which located the centerline of the road as of 1950. Brunner measured his point of beginning from an iron pipe that had been set by Campbell during his survey. Using this method, Brunner was required to survey a distance of 32.8 feet to find the centerline of the old road. Since the Campbell survey and Pina deed located the centerline of the road prior to the changes made in the 1990's, Brunner concluded the later changes to the road were not material. Brunner located what he considered to be the centerline of the dirt road as of 1870, and he took all the rest of his measurements from that centerline (which marked the northeast corner of the Wilsons' property).

Convinced the centerline could not accurately be determined from other monuments, Story chose as the starting point for his survey a pasture fence that remained standing as the only monument identified in the Wentworth deed still intact. Story believed the existing pasture fence was in the same location as it had been in 1870 because the fence appeared to be "ancient." Measuring from the point where that fence crossed the Trimble property line,[2] Story surveyed a distance of 1672.44 feet southwest along the Trimble property line (a number derived from the handwritten Trimble survey from 1885) to identify the northeast corner of the Soda Rock property. He surveyed the other boundaries from that point.

In establishing his boundary, Story relied on the Trimble survey. Story did acknowledge the Pina deed referenced the centerline of the road as of 1950, but he did not believe it was possible to know whether that was also the centerline as of 1870.

Brunner, however, found an unacceptable degree of error in the 1885 Trimble survey and testified it was unreliable for purposes of locating the centerline of the road, in part because the surveying instruments and measurements from 1885 were not reliable enough. Brunner criticized Story's survey

---

[2] In 1870, when Cyrus Alexander deeded the Wentworth property to F.G. Wentworth, a nearby parcel had already been deeded to William Trimble. The controlling description of Trimble's land dates back to an official survey of Trimble's land in 1885 (Trimble survey).

as having used an "inappropriate method." And he thought measuring 1672.44 feet was too long a distance to establish an accurate beginning point for the survey.

Because they used different methods of locating the centerline, Brunner found the northeast corner of the Soda Rock property was 9.41 feet farther northeast than the corner identified by Story, which also pushed the disputed property line to within a few feet of the rear wall of the winery. Brunner's survey located the disputed property line 9.38 feet northeast of where Story located it at the northwest corner of the Wilsons' property (near where the winery was located), which left insufficient room for the Wilsons to have access for continued construction or to receive deliveries through the rear doors.

Another surveyor, James Crabtree, who had over 30 years' experience, also testified as an expert on behalf of Belle Terre, concurring with Brunner's survey. He opined that Brunner used more reliable evidence to locate the property line. He also agreed that the Trimble survey should not have been relied upon because it had a large degree of error. And he testified that the line of trees behind the winery was relevant as a line of occupation in determining the boundary.

In addition to Story's testimony, defendants presented an expert, Robert Curtis, who, through a videotaped deposition, testified the Story survey was correct.

Dick and another witness, David Demostene, who had grown up on the Soda Rock property, testified that as children in the 1940's they believed the cattle fence that ran along the line of oak trees marked the border between the two properties. The cattle fence had been taken down long before the Wilsons bought Soda Rock, but the line of trees remained.

The Soda Rock property had belonged to Demostene's grandparents in 1943, when Demostene and his parents moved onto the property. After his grandparents died, it passed to his mother and her siblings. Demostene's father was a winemaker who operated the Soda Rock winery while he lived on the property, and Demostene assisted with the winemaking. Demostene lived on the property until 1957 and continued to work as a winemaker there until 1972. During the time he was involved, the winery did not use the back avenue for deliveries or any other purpose. The doors at the back of the winery at that time opened inward and were used only for ventilation, not for deliveries. In fact, at that time the doors could not have been opened outward or they would have collided with the cattle fence.

After soliciting proposed statements of decision from the parties, the trial court tentatively accepted the 2008 Brunner survey as establishing the correct

boundary. Following a hearing on the Wilsons' objections to the proposed statement of decision, the court issued an amended and final statement of decision (statement of decision) in favor of Belle Terre on September 7, 2012. The court found "the Brunner survey most closely aligns with the language contained in the original Deed creating the subject parcel and, as such, most closely follows the original intent of the parties." The statement of decision noted that Brunner's location of the property line corresponded closely with the location of the cattle fence that had once existed along the line of oak trees.[3] The court also found "very little evidence, if any, . . . to indicate that the actual centers of the historic route of Highway 128 and the current route of Highway 128, at least as of the time of the 1988 [Campbell Survey], differ in any significant detail."

Judgment quieting title was entered October 1, 2012. The court also permanently enjoined the Wilsons from trespassing on Belle Terre's property. It awarded Belle Terre nominal damages of $1 on the trespass claim and an unspecified amount of attorney fees.

After judgment was entered, Belle Terre moved to fix the amount of attorney fees to which it was entitled. The court held a hearing and on December 21, 2012, it ordered a fee award of $116,920 under section 1021.9.

The Wilsons appealed from the judgment. They argue that the trial court erred in admitting extrinsic evidence, admitting Brunner's testimony, failing to follow accepted principles of deed construction, denying the Wilsons a prescriptive easement, finding the Wilsons liable for trespass on a theory of respondeat superior, and awarding Belle Terre its attorney fees. In the unpublished portion of our opinion, we conclude there was no reversible error with respect to the court's order adjudicating the parties' property rights, granting an injunction against future trespass, or awarding nominal damages for past trespass. In the published porition, we conclude, however, that the award of attorney fees must be reversed.

## II. DISCUSSION

A.–G.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

H.  *Attorney fees*

Based on the award of $1 in nominal damages, the trial court awarded Belle Terre attorney fees of $116,920 under section 1021.9, which provides:

---

[3] The "cattle fence" and the "pasture fence" are two different fences. The cattle fence was attached to the oak trees at some points and at other places was free standing.

See footnote, *ante*, page 1468.

"In any action to recover damages to personal or real property resulting from trespassing on lands either under cultivation or intended or used for the raising of livestock, the prevailing plaintiff shall be entitled to reasonable attorney's fees in addition to other costs, and in addition to any liability for damages imposed by law."

In the present case, nominal damages were awarded without proof of actual injury to real or personal property. On the evidence presented, we reject Belle Terre's argument that the nominal damages might have been awarded based on an implied finding that actual property damage occurred, but the extent of injury or damages could not be determined. (*Avina v. Spurlock* (1972) 28 Cal.App.3d 1086, 1088 [105 Cal.Rptr. 198].) There was no testimony as to any actual damages and there was only incidental and speculative testimony about some possible injury to Belle Terre's real or personal property. There was no testimony that Belle Terre incurred any expense to correct any problem caused by the Wilsons. Thus, the question raised is whether a nominal damages award, without proof of injury to the plaintiff's property, will support an award of attorney fees under section 1021.9.

■ Ordinarily the party awarded even nominal damages may be considered the "prevailing party" for purposes of a statute or agreement awarding fees to the "prevailing party." (*Western Decor & Furnishings Industries, Inc. v. Bank of America* (1979) 91 Cal.App.3d 293, 310–311 [154 Cal.Rptr. 287].) However, the question in this case is not simply who is the prevailing party, but whether the award of nominal damages was one for "damages to personal or real property," so as to trigger Belle Terre's entitlement to attorney fees under section 1021.9. Based on the plain language of the statute, we conclude an award of attorney fees is not available on the facts before us.

■ Nominal damages have been described as "symbolic" (*Davies v. Krasna* (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161]; see *Price v. McComish* (1937) 22 Cal.App.2d 92, 100 [70 P.2d 978]), and are often awarded "[w]here there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty." (*Avina v. Spurlock, supra,* 28 Cal.App.3d at p. 1088.) In this case, plaintiffs did not present any evidence of damages to personal or real property nor were compensatory damages claimed in the prayer for relief. Thus, it appears the award of nominal damages in the trespass action was intended to redress intangible harm to the "dignitary interests" of the landowner personally, and not injury to the land or to his personal property. (Cf. *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352 [1 Cal.Rptr.3d 32, 71 P.3d 296].)

■ The legislative history of section 1021.9 supports our conclusion that nominal damages do not support an award of attorney fees. Originally

enacted in 1986, section 1021.9 was intended to give agricultural landowners and ranchers a meaningful remedy for damage caused by trespassers breaking through fences to take motor vehicles onto private property. (*Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583, 607–608 [63 Cal.Rptr.3d 165] (*Starrh & Starrh*); *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1373–1374 [64 Cal.Rptr.2d 741]; *Haworth v. Lira* (1991) 232 Cal.App.3d 1362, 1368–1371 [284 Cal.Rptr. 62] [discussing legislative history and concluding statute applies to noncommercial ranchers].) The statute was intended " 'to enhance the ability of ranchers to sue trespassers for damages, particularly in those cases where the rancher must now either compromise a significant portion of a valid claim by suing in small claims court . . . or by spending a major share of the recovery to pay his or her attorney.' " (*Starrh & Starrh, supra*, at p. 608.)

■ In this case, however, the parties were primarily litigating a boundary dispute upon which the trespass claim depended. Although the Wilsons' acts of trespass onto Belle Terre's land arguably support an award of nominal damages, there is no evidence of any actual damage to Belle Terre's property that would trigger the provisions of section 1021.9.

In cases falling within the intent of the statute, there must be some tangible harm done to real or personal property as a result of the trespass. The phrase "damages to personal or real property" is most reasonably read as requiring proof of some *actual, compensable injury* to real or personal property before an attorney fee award may be made. Here, Belle Terre neither requested damages in its prayer, nor offered proof of any damage to its property. Accordingly, the award of attorney fees must be reversed.

## III. DISPOSITION

The judgment is affirmed insofar as it quiets title, grants injunctive relief against future trespass, and awards nominal damages, but the order awarding attorney fees is reversed. The parties shall bear their own costs on appeal.

Reardon, Acting P. J., and Rivera, J., concurred.